IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| David Davenport and | ) | Bankruptcy Case No. 12-20766-13 |
| Amber Davenport, | ) | |
|       Debtors | ) | |
| | ) | |
| | ) | |
| Brian and Rebecca Smith, | ) | |
|       Plaintiffs | ) | |
| vs. | ) | Adversary Case No. 12-02024-drd |
| | ) | |
| David and Amber Davenport, | ) | |
|       Defendants | ) | |

**MEMORANDUM OPINION**

The matter before this Court is the Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. §523 (the "Complaint") filed by Brian Smith and Rebecca Smith (collectively, the "Plaintiffs") against David Lee Davenport and Amber Rae Davenport (collectively, the "Debtors"). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§1334(b), 157(a) and (b)(1). For the reasons set forth below, the Court rules in favor of the Debtors with respect to each of the Plaintiffs' claims.

      I.      FACTUAL AND PROCEDURAL BACKGROUND

On or about June 16, 2010, the Debtors entered into a Contract for Sale of Residential Real Estate with the Plaintiffs for the purchase of a home in Columbia, Missouri (the "Property"). As part of the transaction, the Debtors provided a Seller's Disclosure Statement (the "Disclosure") to the Plaintiffs. On the Disclosure, the Debtors represented that they were not aware of any past or present water leakage on the Property (including the basement or crawl

1

space). In addition, they stated that they were not aware of any mold, or any condition indicative of mold, present on the Property. The parties closed on the sale of the Property on or about July 30, 2010.

A mere three days after closing, on a rainy day, the Plaintiffs noticed that water was pooling on the basement floor. A couple of weeks later, during another day of rain, the Plaintiffs noticed water leaking through a bathroom wall. When they removed the plywood wall, the Plaintiffs discovered extensive wood rot from the water damage, mold, and even live slugs. The Plaintiffs' realtor advised them to notify the Debtors, and the Plaintiffs did. The Debtors were not agreeable to repurchasing the Property or making repairs.

The Debtors filed their Chapter 13 petition for relief on May 14, 2012. On August 13, 2012, the Plaintiffs initiated this adversary proceeding to determine the dischargeability of a debt pursuant to §523(a)(2)(A) or alternatively, §523(a)(2)(B), and §523(a)(6).[1] The damages claimed consist primarily of estimated repair expenses they assert they will make (*e.g.*, electrician, mold remediator, landscaper).[2] The amount claimed also includes rental payments for a house the Plaintiffs leased for four months because of health concerns over the mold. Attorney's fees incurred by the Plaintiffs in connection with asserting these claims against the Debtors are included as well.

The Plaintiffs contend that the Debtors falsely and deceitfully represented the condition of the Property to them, knowing that the representations would induce them to purchase the Property. The Plaintiffs also contend that the Debtors willfully and maliciously caused the Plaintiffs to rely on the Disclosure and close on the Property, to their financial detriment. The Debtors have denied these allegations. Additionally, the Debtors assert that David Davenport

---

[1] This Court has dismissed the claim asserted under §523(a)(2)(B).

[2] The overwhelming majority of the repairs have not been made because the Plaintiffs "can't afford it."

2

never obtained any money, property or services from the Plaintiffs because he had no interest in the Property and did not receive or use the proceeds, and therefore, judgment should be entered in his favor on the §523(a)(2)(A) claim. The Debtors also assert that the proper measure of damages is the differential between the purchase price and the actual market value of the Property, not the cost of repairs as proposed by the Plaintiffs. Finally, the Debtors assert that the Plaintiffs have not produced evidence relating solely to the §523(a)(6) claim, nor have they introduced facts from which it can be inferred that the Debtors acted with willfulness and malice.

## II.     DISCUSSION

**Section 523(a)(2)(A)**

Section 523(a)(2)(A) provides:

> A discharge under 727…of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition….

To succeed in an action under §523(a)(2)(A), the creditor must prove the following elements by a preponderance of the evidence: 1) that the debtor made a false representation, 2) that at the time made, the debtor knew it to be false, 3) that the representation was made with the intention and purpose of deceiving the creditor, 4) that the creditor justifiably relied on the representation, and 5) that the creditor sustained injury as a proximate result of the representation having been made. *In re Maurer*, 256 B.R. 495, 500 (8th Cir. BAP 2000).

A.     "Obtained By"

As a preliminary matter, the Court must decide whether David Davenport "obtained" money due to the false representation. The Plaintiffs assert that he benefitted from the false

3

representations in that afterward he resided in a new home with his wife, and that this fact alone is sufficient to satisfy the "obtained by" requirement of the statute.[3] They cite two cases to support their position: *In re Reuter*, 427 B.R. 727 (Bankr. W.D. Mo. 2010), and *Lawyers Title Ins. Corp. v. Dallam*, 850 F.2d 446 (8th Cir. 1988). Both are correctly cited for the view espoused by some courts that the debtor need not actually procure money or property for himself. Rather, all that is required is that the debtor derive some benefit from the money obtained by fraud. However, the facts on which these decisions are based differ significantly from the facts in this case.

In *Reuter*, the debtor and his partner were not spouses. Their relationship was an arms-length one, formed with the intent to combine money and experience to generate a profit. The debtor solicited investment funds in his capacity as a partner -- the partnership benefitted and as a result, the debtor benefitted. In *Dallam,* the debtor operated her own construction business, serving as president and sole stockholder. Before the closing on one of her properties, she delivered to the title insurer an affidavit stating that all construction expenses were paid in full. Relying on the affidavit, the title company issued the insurance for the benefit of the debtor's business. The affidavit turned out to be false, so the title company objected to the debtor's discharge. In a footnote, the *Dallam* court noted that the fact that the debtor's closely-held corporation, rather than the debtor herself, obtained the benefit of the debtor's fraud did not alter her liability under §523(a)(2).

Here, the Debtors were not business partners, nor were they engaged in any kind of profit-making venture. They were simply a married couple attempting to sell a home owned solely by the wife. The General Warranty Deed indicates that Mrs. Davenport purchased the

---

[3]This argument lacks merit. The Plaintiffs are speculating as to the use of the sales proceeds. Nothing in the record indicates that Mr. Davenport used them to purchase a new home.

Property in her name only (*i.e.,* Amber Nichols), before she was married to David Davenport. Even after she married him, she never executed a deed conveying an ownership interest in the Property to her husband. Mrs. Davenport testified that she was the only person obligated on the loan that financed the Property. Mr. Davenport was never added to the mortgage. When Mrs. Davenport received the proceeds from the sale of the Property, she deposited them in her individual bank account. There is no evidence as to what was done with the money thereafter. Thus, in this Court's view, Mrs. Davenport is the only party who "obtained money," as that statutory phrase has been interpreted, from the misrepresentation that led to the sale of her home.

B.  <u>Falsity and Knowledge of Falsity</u>

The first element that the Plaintiffs must prove, therefore, is that Amber Davenport (hereinafter, the "Debtor") made false representations. The second element is that the Debtor knew the representations were false when made. Given that the nature of the representations in this case concern the Debtor's knowledge, these two elements are essentially the same and will be considered together. The Court finds that the Plaintiffs have met their burden as to both.

The Debtor made both oral and written representations regarding the condition of the Property that were simply untrue. Mrs. Smith testified that when she conversed with the Debtor about water leaks on the Property, the Debtor only disclosed a leak underneath the sink and a burst pipe above the ceiling. The Debtor circled "No" in response to the question on the Disclosure, "Are you aware of any past or present water leakage in the house, including the basement or crawl space or other structures?" Based on the record, particularly the expert testimony and photographs, there was indeed ongoing water leakage on the Property.

In assessing a debtor's knowledge of the falsity of the representation, the court must consider the knowledge and experience of the debtor. *In re Moen*, 238 B.R. 785,791 (8th Cir.

BAP 1999)(citations omitted).  Mrs. Davenport testified that, with respect to the statements in the Disclosure that she was not aware of any leakage or water damage, she would "stand by those statements today."  There is sufficient evidence to show that those statements are false.  In the first place, it is apparent that there were water issues while the Debtor resided in the Property in light of the fact that the basement "floor was completely saturated with water" almost immediately after the Plaintiffs moved in.  It was only a short time later that water was leaking through the downstairs bathroom wall.  In addition, based on the extent of the damage shown in the photographs made a part of the record, it is reasonable to conclude that the leakage was ongoing.  This is bolstered by the testimony of the Plaintiffs' expert witness, a certified home inspector, who testified that the water damage was "something that occurred over a lengthy period of time." [4]

Finally, the Debtor lived in the house for seven years.  Given the length of time she lived in the Property, her involvement in its remodeling, and her own testimony as to both, this Court is persuaded that the Debtor knew her representations were false when she made them to the Plaintiffs.

C.	Intent to Deceive

The third element requires proof that the Debtor made the false representation with the intent to deceive the Plaintiffs.  Direct evidence of intent rarely exists, so courts may look to surrounding circumstances to ascertain intent.  *In re Newell*, 164 B.R. 992, 996 (Bankr. E.D. Mo. 1994).  The intent element of §523(a)(2)(A) does not require a finding of malevolence or

---

[4] The inspector also concluded that it was "most likely that they were aware of ongoing leaks in the basement den area, since it is my understanding from the current owners, that new wainscot paneling was recently installed over the western knee wall where ongoing water intrusion evidence and heavy mold growth were discovered."  The Court notes that his assumption about the wainscoting is inaccurate. The Debtor testified that she installed the wainscoting in 2004.  There is no evidence that the water damage was visible there at that time.

personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question. *In re Swan*, 156 B.R. 618, 623 (Bankr. D. Minn. 1993)(citations omitted). Intent to deceive will be inferred where a debtor makes a false representation and the debtor knows or should know that the statement will induce another to act. *Reuter*, 427 B.R. at 753)(quoting *Moen*, 238 B.R. at 791).

In this case, the Debtor herself admitted at trial that she "knew that the Seller's Disclosure Statement was going to be relied upon by persons that were going to potentially buy [the Property]." She knew that the Property had water leakage issues. She was not truthful when she completed the Disclosure, knowing all along that its very purpose was to alert potential buyers of known issues that might not be obvious from a visual inspection. Accordingly, this Court infers that the Debtor made the false representations with the requisite intent to deceive the Plaintiffs.

D. <u>Reliance</u>

Justifiable reliance is the fourth element. This is a lower standard than "reasonable reliance" and involves no duty to investigate. *See Field v. Mans*, 516 U.S. 59, 74 (1995)(A person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation."). "It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." *Id.* at 71-72 (quoting W. Prosser, Law of Torts §108, p. 718 (4th ed. 1971)). *See also In re Guske*, 243 B.R. 359, 363-364 (8th Cir. BAP 2000)("[I]f there are any warning signs (*i.e.*, obvious or known falsities…) either

7

in the documents, in the nature of the transaction, or in the debtor's conduct or statements, the creditor has not justifiably relied on this representation.").

The record reflects that the Plaintiffs had three inspections done on the Property before their purchase.[5] On cross-examination of Mrs. Smith, the Debtors' attorney elicited her admission that she did the final walk-through when the Property was empty (*i.e.*, not "covered up" by rugs or furniture), suggesting that her decision to purchase the Property was driven by her own conclusions rather than the Debtor's misrepresentations. Several courts have recognized a party's right to rely on representations of an adverse party despite conducting his own investigation. The Plaintiffs cite as an example the opinion in *Colgan v. Washington Realty Co.*, 879 S.W.2d 686 (Mo. Ct. App. 1994), which stated:

> [T]he fact that a buyer conducts an independent investigation does not preclude his/her claim of reliance on a seller's misrepresentation if the parties do not stand on 'equal footing' and 'the facts are peculiarly within the knowledge of the party making the representation and are difficult for the representee to ascertain.'…[E]ven if the parties stand on equal footing, if the seller makes a distinct and specific representation, the buyer has the right to rely thereon.

*Id.* at 691(citations omitted). The *Colgan* court noted that in the vast majority of cases, a seller who has lived in a house "through some rainstorms" would have knowledge superior to a buyer who, in contrast, sent an inspector into the house for a few hours and "who may not have been in the house while it rained." *Id.*

Such is the case here. The Plaintiffs' reliance on the Debtor's representations was justified in light of the fact that there were no "red flags" that would have put the Plaintiffs on notice to inquire further or conduct more extensive inspections. The deteriorated wood and pervasive mold were behind the walls, and thus, not visible. Clearly the Debtors were in a

---

[5] On cross-examination, Mrs. Smith testified that she was made aware, through one of the inspection reports, that the chimney was not flashed properly and was likely to allow water to leak in the house if not repaired. She testified further that no actions were taken to repair it. This is not relevant as it is unrelated to the problem areas for which the Plaintiffs seek damages.

superior position to know about this having lived in the home for seven years (and through numerous rainstorms, the Court presumes). Had the Debtor disclosed the prior water damage on the Disclosure, there is a strong likelihood that the Plaintiffs' inspector might have investigated the affected areas more intently or, as Mrs. Smith testified, the Plaintiffs would not have proceeded with the sale. The evidence supports this Court's finding that Plaintiffs' reliance on the Disclosure and on the Debtor's oral representations was justifiable despite the fact that they had inspected the Property themselves.

E.    Proximate Cause

The last element the Plaintiffs must prove is that the injuries they sustained were proximately caused by the Debtor's false representations. According to the Restatement of Torts, proximate cause entails both causation in fact, which requires the misrepresentation to be a "substantial factor in determining the course of conduct that results in the plaintiff's loss," and legal causation, which requires the plaintiff's loss to have been "reasonably expected to result from the reliance." Sections 546, 548A Restatement (Second) of Torts (1976). *See also In re Carlson*, 426 B.R. 840, 857 (Bankr. D. Idaho 2010)(the damage forming the basis of the debt must be traceable to the fraud)(citing *Field*, 516 U.S. at 60); *In re Falco*, 2010 WL 5018295, at *5 (Bankr. W.D. Mo. Dec. 3, 2010)("The law in this jurisdiction is clear that only the portion of the debt which results from the debtor's fraud is nondischargeable.").

At trial, the Plaintiffs presented evidence of the damages they allegedly suffered as a result of the Debtor's misrepresentations. This consisted of the expert testimony of the home inspector retained by the Plaintiffs after the purchase, his report, written estimates they obtained from a variety of contractors, and numerous photographs of extensive water damage. The inspector testified that he found evidence of "substantial" water intrusion in three locations: the

garage, across the back of the Property (including the downstairs bathroom), and the basement. He explained further that the source of the leakage across the back of the Property and the garage was improper attachment and missing flashing of the back deck attached to the house. This caused water to enter behind the siding and penetrate the interior walls. The inspector opined that the source of the leaking in the basement area was different – seepage coming up from the foundation or the slab.

Except to the limited extent noted below, the Plaintiffs have established the necessary causal link between the Debtor's misrepresentations and the claim they seek to have declared non-dischargeable.[6] The Debtors' Disclosure played a significant role in the Plaintiffs' decision to purchase the Property, and the Plaintiffs' damages were reasonably expected to result from their reliance on that fraudulent Disclosure. This Court concludes that the Debtor's false representations proximately caused the Plaintiffs to suffer damages. The Court now turns to the proper measure of damages and the evidence as to specific components of the damages claimed.

G.     Damages

The Plaintiffs argue that the proper measure of their damages is the cost of repairs to the Property, relying on *Stom v. St. Clair Corp.*, 153 S.W.3d 360 (Mo. Ct. App. 2005). The parties in *Stom* were homeowners who filed suit against their contractor when the windows the latter installed were defective. The issue was the measure of damages in a breach of contract case. The court noted that the general rule is that the non-breaching party is entitled to the cost of repairs or replacement unless those costs are disproportionate to the diminution in value of the property, citing *Ken Cucchi Construction, Inc. v. O'Keefe*, 973 S.W.2d 520 (Mo. App. E.D.

---

[6] At the end of trial, the Court expressed concern that some of the damages the Plaintiffs presented through the repair estimates were completely unrelated to the claims they were making. The Plaintiffs did not dispute that. Following the hearing, the Plaintiffs withdrew their request for these repairs: all of Withrow Electric's estimate except for $129.20, all of Orkin Pest Control's estimate, and all of Nemow Insulation Co.'s estimate.

10

1998). Once the property owner presents evidence on repair costs, the burden shifts to the contractor to present evidence that the costs are disproportionate to the diminution in value. *Id*. at 527.

In contrast, the Debtors argue that the proper measure of damages is the differential between the Plaintiffs' purchase price and the actual market value of the Property, citing *In re Russell*, 203 B.R. 303, 316 – 317 (Bankr. S.D. Cal. 1996). The facts in *Russell* are substantially similar to the facts before the Court. The debtors sold their home to the plaintiffs without disclosing drain problems they had experienced or excavation and patches made to the concrete slab. A few years after they moved in, the plaintiffs noticed water on the floor that smelled of sewage. They discovered the previous damage beneath the house upon further investigation. At the dischargeability proceeding, the plaintiffs offered expert testimony on the value of the home had the debtors chosen to reveal the structural problems. The debtors offered the expert testimony of an appraiser to show the property's fair market value over the period the plaintiffs owned it. The court concluded that the plaintiffs sustained a loss representing the difference between the purchase price and the fair market value had the debtors disclosed the past problems and potential problems with the house.

The determination of non-dischargeability under §523(a)(2) is a two-step process. First, the validity of the creditor's tort claim must be established under state law. Then, if the debtor is found liable, dischargeability of the claim is addressed, governed by the general common law of torts. *In re Reuter*, 686 F.3d 511, 518 (8th Cir. 2012)(citing *Field*, 516 U.S. at 70). Thus, this Court must turn to Missouri law to determine the Debtors' liability, if any, and the proper measure of damages. Missouri has adopted the "benefit of the bargain" rule which states that the appropriate measure of damages for fraudulent misrepresentation is the difference between the

11

fair market value of the property received and the value if the property had been as represented. *Larabee v. Eichler*, 271 S.W.3d 542, 548 (Mo. 2008)(citing *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. 1988)). *See also Norber v. Marcotte*, 134 S.W.3d 651, 661 (Mo. Ct. App. 2004)(measure of damages in a fraud case where defrauded party retains the property is the benefit of the bargain). The damages are measured at the time of the transaction. *Heberer*, 744 S.W.2d at 443. Courts have held that the contract price is strong evidence of the value of the property if it had been as represented. *Larabee, supra,* at 548 (citing *Smith v. Tracy*, 372 S.W.2d 925, 939 (Mo. 1963)). *Cf., T.J. Schoenlein v. Routt Homes, Inc.,* 260 S.W.3d 852 (Mo. Ct. App. 2008)(remanding for retrial on the damages issue because the plaintiffs did not introduce evidence of the value of the property).

Applying the benefit of the bargain measure, the Plaintiffs had the burden of showing the differential between the fair market value of the Property when they received it and its value if there were no water leakage issues as the Debtor represented. The Plaintiffs presented no evidence on either value. Although the Court could arguably use the contract price as evidence of the Property's value if it had been as represented, that is only one half of the equation. The Plaintiffs still had the burden to prove the Property's value when they received it. The only evidence the Plaintiffs offered of the damages they sustained were the estimates for repairs and replacement. The record lacks any written report or expert testimony on the fair market value of the property, as was presented in *Russell*. Accordingly, the Court finds that the Plaintiffs have not satisfied their burden to establish their damages using the proper measure under Missouri law.

The Court notes that the Plaintiffs sufficiently proved every other element required – that the Debtor made representations that were false and knew of their falsity when made, that the

Debtor had the requisite intent to deceive the Plaintiffs, that the Plaintiffs justifiably relied on those representations and sustained injuries that were proximately caused by them. However, because the Plaintiffs did not offer evidence to prove their damages under the established formula for a fraud claim in this context, the Court must rule in favor of the Debtor with respect to the Plaintiffs' §523(a)(2)(A) claim.[7]

**Section 523(a)(6)**

In terms of asserting a claim under §523(a)(6) in their Complaint, the Plaintiffs essentially restated the allegations they made under §523(a)(2)(A), and made a blanket statement that the Debtors "knowingly, willfully, maliciously and intentionally caused Smith to rely on the Disclosure and close on the Property, to the financial detriment of Smith." A determination of nondischargeability under §523(a)(6) requires proof of an intentional tort. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)(holding that the statute's language "mirrors the definition of an intentional tort, which requires an actor to 'intend' the consequences of an act, not simply the act itself"). *See also In re Steger*, 472 B.R. 533, 537 (8th Cir. BAP 2012)(a debt excepted from discharge under §523(a)(6) requires an injury "that results from the commission of an intentional tort"). In this case, the only tort Plaintiffs have asserted is fraud, and the Court has already determined that they did not sustain their burden of proof as to that claim. It is apparent to this Court that the Plaintiffs have pled that the Debtors are liable under §523(a)(6) in an effort to circumvent the "obtained by" requirement and other limits on their damages. The Plaintiffs cannot simply reassert their claim for damages, the recovery of which has already been denied, under §523(a)(6). The same situation occurred in the *Russell* case, *supra*. There, the court concluded that "where plaintiffs have alleged only financial loss and no other damages, such as

---

[7] Because the Plaintiffs failed to apply the proper measure of damages, the Court's ruling also applies to any additional costs claimed by the Plaintiffs (*i.e.*, expenses incurred for repairs already made, rental charges and attorney's fees).

conversion of property or personal injury, §523(a)(6) simply does not apply." *Russell*, 203 B.R. at 318. This case is no different. The Plaintiffs' claim does not appear to involve injury to person or conversion of property, only financial damages presented through repair estimates. Therefore, §523(a)(6) does not apply.

Furthermore, even if the Court could consider the Plaintiffs' claims under §523(a)(6), it would find that the Plaintiffs' proof was insufficient. To establish that a debt is excepted from discharge under §523(a)(6), the creditor must show by a preponderance of evidence that the debt is for both "willful injury" and "malicious injury." *In re Scarborough*, 171 F. 3d 638, 641 (8th Cir. 1999). The term "willful" in this context requires a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. *Kawaauhau*, 523 U.S. at 61.. The term "malicious" for purposes of §523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act. *In re Halverson*, 226 B.R. 22, 26 (Bankr. D. Minn. 1998).

This Court may consider both direct evidence of the debtor's subjective state of mind and evidence of the surrounding circumstances, and then may make appropriate inferences as to whether the debtor harbored the proscribed intent. *See, e.g.*, *In re Long*, 774 F. 2d 875 (8th Cir. 1985)(to evaluate intent, court relied on debtor's undisputed testimony as to his intent, and the likelihood of harm).

In order to prevail under §523(a)(6), the Plaintiffs had to establish by a preponderance of the evidence that the Debtors had the requisite intent to willfully and maliciously injure them. The Court finds that they have failed to sustain that burden. Nothing in the record substantiates the Plaintiffs' claim that the Debtors harbored the requisite intent to cause injury or that he targeted they Plaintiffs specifically. The only representations they made were on the Disclosure,

14

and that was provided to all prospective purchasers. Thus, the Plaintiffs' claims would not be non-dischargeable pursuant to §523(a)(6).

### III.   CONCLUSION

For the reasons cited above, the Court finds that Plaintiffs have not shown by a preponderance of the evidence that their claim satisfies the criteria for non-dischargeability under §523(a)(2)(A) or §523(a)(6) against either Debtor.

A separate order will be entered consistent with this opinion.

Dated:  May 2, 2013              /s/ Dennis R. Dow
                                                         THE HONORABLE DENNIS R. DOW
                                                         UNITED STATES BANKRUPTCY JUDGE